After working for the IRS for 15 years, Harold Mervite was removed for unacceptable performance. The IRS removed Mr. Mervite in a way that violated two applicable collective bargaining agreements. These contractual violations formed the entire basis for Mervite's removal, and therefore constituted harmful error. Under the Civil Service Reform Act, a removal action based on harmful error cannot be sustained. Accordingly, Mr. Mervite's removal must be reversed. It is clear that when the IRS removed Mr. Mervite, it violated two collective bargaining agreements, and therefore committed procedural error. These agreements prohibit the IRS from evaluating and removing an employee based exclusively on something known as E- Excuse me, you're referring to the 2006 and the 2009 collective bargaining agreements? Actually, I'm referring to the 2009 collective bargaining agreement and also a letter of understanding. One question, is a letter of understanding sort of an addendum to a collective bargaining agreement whereby the parties say, okay, there's a few things we want to clarify, and here is what we mean by these provisions? Is that what it- Yes. It's a midterm agreement. So the LOU, I believe, was agreed to around 2008. So the LOU, the main issue in this case, or the main agreement at issue? It's both the LOU and the 2009 collective bargaining agreement. Okay. Yes. So these agreements, the LOU and the 2009 agreement, prohibit the IRS from evaluating and removing an employee based exclusively on EQRS case reviews, which is what the IRS did here. EQRS just stands for Embedded Quality Review System. Reliance on EQRS case reviews is prohibited because the EQRS evaluation method is unreliable. Why? An EQRS case review is supposed to evaluate an employee's performance on a particular taxpayer case. It consists of two components, a checklist of tasks that the employee either completed or failed to complete, and a paragraph explaining the checklist. One is part of the performance appraisal system, and the other is part of the unacceptable performance analysis. Isn't it? They're two different things. Well, it's all one system, so the removal is based on valuation, and there's Article 12 of the Collective Bargaining Agreement that covers the appraisal system, but it also applies to evaluations that take place at any stage in an employee's career. So the checklist approach that is EQRS, it discourages the IRS. The reason it's unreliable is it discourages supervisors from taking into account mitigating circumstances, instances of superior performance, from considering errors in context, and from evaluating employees holistically. When you said paragraph 12, you're referring to 12C of the 2009 agreement? I'm sorry. Article 12 of the 2009. Let's see. I'm looking. Well, yeah, Article 12, and then there's a section 12C, which I thought was J843. Yes. Okay. Yes. So that, along with the LOU, are the provisions of issue. So 12C, J843, and the LOU, J836, in your view, are the key provisions. Yes, they are. Key. Yes. So if you look at those provisions, the LOU, it states that, quote, EQRS case reviews will serve as one factor in the appraisal process. But the bargaining agreement states that, quote, supervisors will consider all factors, not just EQRS case reviews, to provide a fair and accurate assessment of the employee's performance. Yet, despite these express contractual provisions, the IRS removed Mr. Wright based exclusively on EQRS case reviews. A little background may be helpful to understand why this is the case. I'm sorry if you're constantly jumping in on me here, but time is fleeting, so to speak. Judge Wallach raised the point that we're dealing here with a removal and that the, at least on their face, the provisions to which you direct our attention relate to regular periodic performance evaluations that employees get either annually or twice a year. And I thought you might say it's overly facile, but the government argues in its brief that, you know, what you're dealing with in a performance improvement plan or an OP period, as we have here, is a specific problem that an employee has and the need to try and get the employee back on track with respect to that problem, so that you have a more focused. And they give the example of someone who has a problem with being late to work or absent without leave. So obviously there, what you would just focus on are the time and attendance records and so forth. So, number one, isn't there some merit to that? And number two, as a broader matter, do we really want to be getting into the business of telling agencies how they need to structure performance improvement plans, or in the case of the IRS, an opportunity for improvement period, when they should have some leeway in that? Those are two questions that I have. Yes. Let me take the second question first. It's not whether the court wants to get involved, it's whether the parties have agreed to this. And the parties did agree on two different occasions. First, when they agreed to the LOU, and second, when they agreed to this collective bargaining agreement. I believe you're... Well, that comes to whether we read those as applying. Yes. So that would be your first question. And I would say there are three reasons why all of this applies for removal action. So if you look in Article 12, the very first sentence on JA 41, it says this article is intended to be interpreted and applied in a manner consistent with 5 U.S.C. Chapter 43. And Chapter 43 is the section of the U.S. Code under which employees are removed. Two other points. Article 40 in this agreement, which in the collective bargaining agreement, that is what specifically applies to removals. It's designed to be read in conjunction with Article 12. And that's so because many of the terms and phrases in Article 40 are defined in Article 12. So the phrase critical job elements is defined in Article 12. The phrase performance standard is defined in Article 12. This is all one big performance system. It's one system. Another thing, if you look at Article 40, it says that removals have to be fair. It doesn't say what's fair. Article 12 says that for it to be fair, you can't rely just on EQRS. So it doesn't make sense that what would be unfair at one stage in the process becomes fair later on. This is one big system. It has to be read together. So the letter proposing revised removal was entirely based on EQRS case reviews. It consisted of 10 specifications, each one that supposedly describes how Mervide performed in a particular taxpayer case. But when you compare those specifications, they're pulled from previously created EQRS case reviews. So, in that way, it's evident that Mervide was removed based on just the EQRS evaluation method. Now, this was harmful error. Harmful error is defined as... Yes. Yes, Your Honor. But that was not part of this removal process. The removal process began with a proposal letter, and that is what's critical to this appeal. You look at the proposal letter, whatever the supervisor considered outside of that, it wasn't a factor in the removal decision. So the proposal letter, that's what the employee had a chance to respond to, and that's what constituted the IRS's deciding official's decision. So that's what's important. Now, so the EQRS case reviews... Let me back up a moment. Harmful error is defined as error that is likely to have caused the agency to reach a different conclusion. The error here was harmful because it formed the entire basis for the IRS's decision to remove Mr. Mervide. Once you take out those EQRS case reviews from the proposal letter, there's nothing left justifying the removal. Under these circumstances, there can be no doubt that Mr. Mervide would not and could not have been removed without that EQRS evaluation method. His removal was void from the start. And does the EQRS equal his performance during the opportunity period? In this case, the IRS, that's how the IRS in the proposal letter evaluated his performance during the opportunity period. So each of those EQRS reviews are taken, are basically errors that he supposedly committed during the opportunity period. So you're correct. So this error that the IRS committed relying on EQRS case reviews, it's compounded by another procedural error the IRS committed. Before Mervide's removal was proposed, Mr. Mervide asked his supervisor to review 12 cases that he had completed successfully during the opportunity period, and she refused. This refusal violated another section of the collective bargaining agreement, which requires supervisors to consider, quote, a representative sample of the employee's work, and, quote, any particular cases the employee asked the supervisor to review. So by refusing to look at these cases that Mr. Mervide closed successfully, the IRS skewed his decision making in favor of finding his performance unacceptable. And the IRS's refusal to consider these positive accomplishments balanced against any performance deficiencies necessarily casts doubt on the IRS's decision. So for all of these reasons, the IRS committed a harmful error here when it removed Mr. Mervide. Under 5 U.S.C. Section 7701, an action based on harmful error must be reversed. Because a harmful error occurred here, Mr. Mervide must be reinstated and made whole in the applicable laws, including the Back Pay Act. If the Court has no further questions at this point, then with the Court's permission, I would like to reserve the remainder of my time for rebuttal.  Thank you. We'll hear from the government. Ms. Howard. Good morning, Your Honors. May it please the Court. On appeal, Mr. Mervide has not challenged the factual findings by the arbitrator that he was unable to meet the requirements of his position as demonstrated by the specifications in the Notice of Proposed Removal. Nothing in the collective bargain agreement prohibited the agency from using narrative summaries recorded in the EQRS database in determining whether Mr. Mervide improved his performance during the opportunity period, particularly where those narrative summaries were prepared by Mr. Mervide's supervisor based upon her observation and interaction with Mr. Mervide and a review of his cases. There are two provisions of the collective bargain agreement that, again, we do not believe that the collective bargain agreement section 12 applies to performance-based removals, but to the extent that they do, neither of them prohibit what the agency did here. Section C on page 43 identifies that non-quantitative data gathered from their abuse may be relied upon for the basis of a mid-year or annual appraisal. Again, we don't have a mid-year or annual appraisal here, but even assuming that it did apply, the agency was permitted to use those case summaries, which, again, were prepared by Mr. Mervide's supervisor and are reflective. But that's apples and oranges. That's two different things. Well, we agree, Your Honor. And I think it's particularly useful that if you look at the larger picture, we go back to November 2008. Mr. Mervide receives his annual review, which is based upon all five critical job elements for the position of revenue officer. He meets four out of five, but he's not successful in the fifth in business results efficiency. So the agency puts him on this 90-day opportunity period to focus on that one specific critical job element. And it's entirely appropriate that the agency be able to measure his success on that element using the data that's most applicable to that element. So, for example, in the letter of understanding, there's reference to factors such as interactions with the public. That may be entirely appropriate for the agency to use when evaluating Mr. Mervide's customer service skills, but it has no application to whether or not he's making progress moving his cases along in a timely manner, which is the problem that the agency was trying to address in the opportunity period. So, again, we're dealing with a focused evaluation that is most appropriately addressed by looking at the facts which support whether he's moving these cases along. It would appear that under Mr. Mervide's theory had his supervisor simply written down these narrative summaries on a note sheet and kept it in her drawer and then used those as the specifications in the notice of proposed removal. That would be entirely acceptable, but the mere fact that she recorded these facts in the database somehow taints the evidence. The bottom line is that Mr. Mervide has not challenged the arbitrator's conclusion that the agency proved by substantial evidence that he, in fact, didn't make progress on the specific cases that are identified in the notice of proposed removal. The second issue that Mr. Mervide contends was an error, was the agency's failure to review closed cases. And as we identify on page 19 and 20 of our brief, Mr. Mervide fails to demonstrate how this would be harmful or how it would have affected the ultimate conclusion. But, again, with reference to what the collective bargaining agreement actually requires, assuming that it's relevant to the issue that we have here, it requires that the supervisor select a representative sample of cases and it requires that the supervisor may consider cases... Where are you looking at now? This is... Where's the joint appendix? Right. Sorry. I'm looking at page 49 of the joint appendix. So this is dealing with evaluative recordations, which is the provision that Mr. Mervide is challenging here. So section D says, in selecting cases for review, the employer will select a reasonable and representative sample and will consider any particular cases the employee asks him or her to review. So, again, there's no suggestion that what Ms. Grant did was select cases that were a representative sample of the inventory that he had. And the provision doesn't require the supervisor to review every case that the employee selects. It just requires that she consider it. Just one question. It says any particular cases. 9D says the supervisor will consider any particular case for MS, meaning for cases the employee asks him or her to review. You're right, Your Honor. I apologize. Let me back up and say... So, again, in this particular case, at the outset of the opportunity period, Mr. Mervide was notified that what would happen at the end was that his supervisor would review 50% of the open inventory. So he knew from the beginning. That was my understanding. That was the beginning. That closed cases were irrelevant. That closed cases were irrelevant. And, in fact, in selecting those cases, there was a case that was closed and Ms. Grant said, you can select another case for me to review. So he had the opportunity to provide his supervisor with another case that he thought would be appropriate. The bottom line here is that... That is to say an open case. An open case. The bottom line here is that after a review of half of the open inventory, Mr. Mervide was failing to meet this critical job element in about 20% of his cases. Even assuming that the 11 cases that Mr. Mervide believed should have been included in the review were considered and assuming that he met all of the performance standards for those, he still would have been failing to meet the critical job element at 15%, which is more than occasionally. So there's no... This is... The provision you were discussing just a while ago, 49, JA 49, is, I guess, from the appendix you're part of the 2006 national agreement. What is the interplay between the 2006 and the 2009 agreement as it relates to this case? I guess to an extent, they're both applicable. Is that correct? They're both applicable and I don't believe that there's a critical... I don't believe that there's a substantive difference with respect to that. And I apologize, Your Honor, because I can't find the 2009 version right now. Oh, the 2009 version was the 41, JA 41. Well, I'm sorry, I meant with respect to that particular... Yeah, no, I don't think it's in there. I didn't see it. The only place that I saw that provision, as far as I could tell, I could be wrong, was in connection with what we have from the 2006 agreement, the JA 49. Well, you're basically saying they both are relevant. Both. The bottom line is that it had no application here. And even assuming that it had application here and it was an error for the agency not to do what Mr. Merbite alleges, it's not a harmful error. Because the bottom line is that Mr. Merbite has not challenged the ultimate factual finding by the arbitrator that he was unable to meet deadlines and to timely move his cases along. And the factual basis for the specifications in the notice of proposed removal were proven by substantial evidence. Whether or not they were recorded in the EQRS database should not taint that ultimate conclusion. And if the court has no further questions, we would respectfully request that the court affirm the decision of the arbitrator in this case. Any other questions? Okay. Thank you. Mr. Henry Kendrick. Do you have any disagreement with your opposing counsel's discussion of the similarities between 06 and 09? No, actually, there's a huge difference. The 2006 agreement doesn't have anything about EQRS. So the letter of understanding was the first time that the parties prohibited supervisors from relying just on EQRS to evaluate and remove employees. Senator Canford, let me ask you this. At the time, in other words, is it your view that in removing Mr. Merbite, the agency had to comply with both the 2009 and 2006 agreements and also the LOU? The 2006 agreement, I believe, expired at the time that this removal was proposed. The 2009 agreement was in effect then, as was the LOU. Is there a provision in the 2009 agreement with respect to your argument that the agency had to consider cases that were closed that Mr. Merbite wanted the agency to look at? Yes, that's the provision that you were discussing before. I'm sorry, that's from the 2006 agreement. So in other words, that's what I'm saying. That appears in the 2006 agreement, but at least in terms of what we have in the appendix, I didn't see it in the 2009 agreement. Right. In terms of that provision, I don't believe there's any difference. That was my question about substantive differences and what the government said. That's what they represented to us. That there is no substantive difference between 2006 and 2009 as to selecting cases for review and considering any particular cases. I apologize, you're correct. So that provision does appear in the 2009 agreement too, although we don't have that here? Correct. I think it would be helpful if you were to send it to us. I believe the 2009 agreement doesn't apply to the period of time when his cases were being reviewed, when he asked those cases to be reviewed, and that's why we submitted the 2006 agreement, but I'm happy to submit that to the court. The only reason I was asking is because you had said that the 2006 agreement wasn't in effect during the period. Well, you say it was in effect during the opportunity improvement period? The 2006 one, yes. It was? Okay. Yes. Just two points I would like to make. First, this decision was contrary to the statute. The statute says that a removal action based on harmful error cannot stand, and this removal action was based entirely on EQRS case reviews. The other reasons that the IRS discusses, such as the supervisor's first-hand observations, those aren't part of this removal action. And second, we are not challenging, opposing counsel is correct, we are not challenging the facts of this case. It's a harmful error challenge. Under 5 U.S.C. 7701, even if there is substantial evidence, you can't base removal on harmful error. If the court has no further questions, then I would respectfully ask you to... Any more questions? Any more questions? All right, then if you'll send us the missing pages, check with the Department of Government counsel. We don't want arguments just to fill the gap in the records. Absolutely, Your Honor.